UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JACQUELINE ALPETER,

                Plaintiff,

v.                                                     5:16-CV-1117
                                                        (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

STANLEY LAW OFFICES LLP                 STEPHANIE VISCELLI, ESQ.
 Counsel for Plaintiff
215 Burnet Avenue
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.             JUNE L. BYUN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **<u>DECISION and ORDER</u>**

      Currently before the Court, in this Social Security action filed by Jacqueline Alpeter ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 14, 18.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

I.      **RELEVANT BACKGROUND**

   A.      **Factual Background**

Plaintiff was born in 1957, making her 51 years old at the alleged onset date and 57 years old at both the date last insured and the date of the ALJ's decision. Plaintiff reported completing four years of college and obtaining a Bachelor's degree. Plaintiff has past work as a library assistant. Generally, Plaintiff alleges disability due to anxiety, depression, hypothyroidism, and stiff knees.

   B.      **Procedural History**

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on February 25, 2013, alleging disability beginning June 12, 2009. Plaintiff's application was initially denied on May 2, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Marie Greener on December 1, 2014. On January 6, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 13-22.)[1] On August 2, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 6-8.)

   C.      **The ALJ's Decision**

Generally, in her decision, the ALJ made the following eight findings of fact and conclusions of law. (T. 15-22.) First, the ALJ found Plaintiff was insured for benefits under Title II until March 31, 2015. (T. 15.) Second, the ALJ found that Plaintiff has not engaged in

---

[1]     The Administrative Transcript is found at Dkt. No. 11. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

substantial gainful activity since the alleged onset date. (*Id*.) Third, the ALJ found that Plaintiff's obesity, depression, and anxiety are severe impairments, while hypothyroidism is not a severe impairment and allegations of knee pain, autism, and a seizure disorder are not medically determinable impairments. (T. 15-16.) Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 16-17.) Specifically, the ALJ considered Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). (*Id*.) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> less than the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). She can lift and carry up to 50 pounds occasionally and 25 pounds frequently; sit for six hours in an eight-hour workday; and stand/walk for six hours in an eight-hour workday. She is limited to "low-stress" work, which is defined as work that requires routine daily tasks and duties in the same workplace that do not require high production quotas or multitasking, and which do not require working in tandem or in conjunction with others. However, the claimant can work in proximity to others.

(T. 18.) Sixth, the ALJ found that Plaintiff is unable to perform her past work as a library assistant with the limitations in the above RFC. (T. 20-21.) Seventh, the ALJ found that Plaintiff had acquired the following skills from her past relevant work: record keeping, filing, cataloguing information, locating, data entry, and giving information to others. (T. 21.) Eighth, and last, the ALJ found that Plaintiff remains able to perform a significant number of other jobs in the national economy, such as tape librarian, returns clerk, and page. (T. 21-22.) The ALJ therefore concluded that Plaintiff is not disabled.

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff makes three arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the RFC finding is not supported by substantial evidence because the ALJ did not rely on any opinion evidence from a physician to guide the assessment. (Dkt. No. 14, at 4-7 [Pl. Mem. of Law].) Plaintiff additionally argues that the ALJ erred in failing to afford great weight to an opinion from her treating therapist rather than relying on the opinion of a non-examining State Agency psychological consultant. (Dkt. No. 14, at 5-7 [Pl. Mem. of Law].)

Second, Plaintiff argues that the credibility finding is not consistent with the applicable legal precedent because the ALJ failed to apply any of the required regulatory factors and "merely used boilerplate language." (Dkt. No. 14, at 7-8 [Pl. Mem. of Law].)

Third, Plaintiff argues that the Step Five finding is not supported by substantial evidence because it was based on a hypothetical question that did not accurately and completely describe Plaintiff's limitations. (Dkt. No. 14, at 8-9 [Pl. Mem. of Law].)

Generally, Defendant makes three arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the RFC finding is supported by substantial evidence. (Dkt. No. 18, at 5-11 [Def. Mem. of Law].) More specifically, Defendant argues that the ALJ properly afforded little weight to the therapist's opinion because she was not an acceptable medical source according to the regulations and her opined limitations were not supported by the other evidence in the record, including the opinions from the consultative examiner and State Agency psychological consultant. (Dkt. No. 18, at 7-11 [Def. Mem. of Law].)

Second, Defendant argues that the ALJ properly considered credibility according to the regulations by citing to Plaintiff's reported daily activities, work activity after the alleged onset

date, and Plaintiff's ability to provide focused and articulate responses at the hearing. (Dkt. No. 18, at 11-13 [Def. Mem. of Law].)

Third, Defendant argues that the Step Five finding is supported by substantial evidence because substantial evidence supports the limitations the ALJ included in the hypothetical question to the vocational expert, whose testimony provided the basis for the Step Five finding. (Dkt. No. 18, at 13 [Def. Mem. of Law].)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.  **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed

> impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Whether the ALJ Properly Weighed the Opinion Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 18, at 5-11 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"

*Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), report and recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017)) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. *See* 20 C.F.R. § 404.1527(c)(1)-(6). Additionally, when weighing opinions from sources who are not considered "medically acceptable sources"[2] under the regulations, the ALJ must consider the same factors as used for evaluating opinions from medically acceptable sources. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (citing *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)); SSR 06-03p, 2006 WL 2329939.

As an initial matter, Plaintiff's cursory argument that the RFC is "comprised solely of the [ALJ]'s own lay opinion" is clearly contradicted by the ALJ's notations that she afforded great

---

[2] Medically acceptable sources are noted to include the following: licensed physicians; licensed or certified psychologists; licensed optometrists; licensed podiatrists; and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

weight to the opinion from consultative examiner Elke Lorensen, M.D., considerable weight to the opinion from State Agency psychological consultant R. Nobel, Ph. D., some weight to the opinion from examining physician Robert Kohlbrenner, Ph. D., and her implicit acceptance of the opinion from consultative examiner Dennis Noia, Ph. D. (T. 19-20.) All of these sources are medical professionals and acceptable medical sources and the ALJ used their opinions as guidance, along with the rest of the evidence in the record, when crafting the RFC. Plaintiff's assertion that the ALJ improperly relied on her own lay opinion is therefore unsupported.

The true crux of Plaintiff's argument is that the ALJ should have afforded greater weight to the opinion from her therapist Kathleen Cerro, L.C.S.W., related to Plaintiff's mental functioning rather than relying on the opinion of a non-examining source. (Dkt. No. 14, at 5-7 [Pl. Mem. of Law].) Plaintiff fails to provide any clear reasons why Ms. Cerro's opinion was entitled to greater weight other than conclusory statements that her opinion was "well supported by the substantial evidence of record." (Dkt. No. 14, at 5 [Pl. Mem. of Law].) However, Plaintiff's argument is not persuasive in light of the substantial evidence supporting the ALJ's finding.

On August 6, 2014, Ms. Cerro opined that Plaintiff had marked limitations in areas of understanding and memory including remembering locations and procedures, and understanding and remembering even simple instructions; in areas of concentration and persistence including carrying out even simple instructions, maintaining attention and concentration for extended periods, performing to a schedule, maintaining regular attendance, being punctual within customary tolerances, sustaining a routine without special supervision, working in coordination with or proximity to others without being distracted, making work-related decisions, and completing a workday or workweek without interruption from psychological symptoms; in the

9

area of social interaction including asking questions and requesting assistance, accepting instructions and responding appropriately to criticism, and getting along with coworkers without distracting them or exhibiting behavioral extremes; and in the area of adaptation including responding appropriately to changes in work setting, setting realistic goals, and making plans independently of others. (T. 312-13.) Ms. Cerro also indicated that Plaintiff would miss work one or more times per month on average because that "is her history" and would be off-task 20 percent or more of the workday because she had been easily distracted at all her jobs. (T. 310.)

The ALJ afforded little weight to Ms. Cerro's opinion, noting that the evidence suggested that, while Plaintiff had impairment in certain areas of mental functioning, she also had good functioning in other areas, and finding this opinion inconsistent with Plaintiff's high IQ and history of college-level education as well as with her ability to provide focused and articulate answers to questions during the hearing. (T. 20.)

Substantial evidence supports the ALJ's finding that the evidence did not substantiate the level of restrictions Ms. Cerro opined. Notably, although Ms. Cerro's treatment notes indicate Plaintiff's variously reported symptoms of depressed mood, low self-esteem, feelings of helplessness, anxious feelings, fear, worry thoughts, negative self-reliance, and preoccupations, they do not contain objective mental status examinations. (T. 199-233.) On November 22, 2011, Ms. Cerro did note that Plaintiff avoided eye contact and had a tense posture, restricted affect, pessimistic mood, gaps in insight, and was only able to do simple decision-making, but she also noted that Plaintiff was on Citalopram for depression and reported good self-care and social functioning abilities. (T. 194, 196.) Examinations from primary care and other physicians often noted normal mental status findings. (T. 276, 323, 356, 361.) Consultative examiner Dr. Noia observed normal thought processes, calm mood, a relaxed and comfortable appearance with a

congruent affect, and that she was oriented and had intact attention, concentration and memory, intellectual functioning estimated in the average range, and good insight and judgment. (T. 290.) Treating and examining sources also noted that Plaintiff reported that Citalopram controlled her depression symptoms well. (T. 321, 361, 364, 372.) Additionally, the treatment evidence as a whole does not substantiate the extensive difficulties with attention, concentration, and carrying out tasks that Ms. Cerro opined. After multiple examinations in August and September 2011, Dr. Kohlbrenner noted that while expectations to work quickly under pressure would significantly interfere with Plaintiff's capacity to perform at normal levels, she interacted in an appropriate manner, put forth good effort on all tasks during the testing, was engaged and appropriate, and was able to complete the administered testing. (T. 432-33.) Dr. Kohlbrenner also noted that Plaintiff displayed an average ability to attend and concentrate when listening and in her short-term auditory memory. (T. 432.) On April 10, 2013, Dr. Noia observed intact attention, concentration, and memory. (T. 290.) On August 25, 2014, Plaintiff reported to Michael Picciano, M.D., that her concentration was good. (T. 321.) The above constitutes substantial evidence to support the ALJ's finding that Ms. Cerro's opinion was not consistent with the level of functioning documented in the medical treatment records. Inconsistency or lack of support from the evidence can constitute a good reason for rejecting an opinion. *See Saxon*, 781 F. Supp. 2d at 102 ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007)); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (indicating that the extent that an

opinion is consistent with the record as a whole is one of the factors considered when determining the amount of weight to which an opinion is entitled).

Plaintiff's argument that the ALJ should not have relied on Dr. Nobel's opinion because it was based on a review of incomplete medical records is not persuasive. (Dkt. No. 14, at 5-7 [Pl. Mem. of Law].) Plaintiff argues that Dr. Nobel's opinion cannot be reliable evidence to support the ALJ's findings because it was completed almost two years prior to the ALJ's decision, yet Plaintiff does not explain how this is fatal to Dr. Nobel's opinion, particularly as he had the opportunity to review the treatment records from Ms. Cerro, the primary source of mental health treatment. The initial decision shows that Dr. Nobel was able to consider records from Psychological Healthcare (where Ms. Cerro treated Plaintiff) and CNY Family Care as well as Dr. Noia's examination and opinion. (T. 29-30.) Additionally, Plaintiff's argument that this opinion was stale ignores the fact that she alleged disability back to 2009 and Dr. Nobel did not review the record and render an opinion until 2013, suggesting he would be able to offer an opinion about a significant portion of the relevant time period. Notably, although the ALJ afforded considerable weight to Dr. Nobel's opinion, she included limitations beyond the capacity for semi-skilled work that Dr. Nobel opined based on consideration of all the evidence, and Plaintiff has not pointed to any evidence which suggests she would be further limited to unskilled work contrary to Dr. Nobel's opinion. (T. 18-20.) The ALJ did not rely solely on Dr. Nobel's opinion, but rather based the findings on a consideration of all the evidence in the record. The fact that Dr. Nobel did not review all the evidence is therefore not fatal because the decision clearly shows that the ALJ accounted for the evidence as a whole, including the opinions from other physicians, rather than merely adopting Dr. Nobel's opinion. There was therefore nothing improper about the ALJ's consideration of Dr. Nobel's opinion.

Plaintiff's attempts to establish consistency between Ms. Cerro's opinion and the opinion from Dr. Noia are also not persuasive. Plaintiff asserts that Dr. Noia opined a marked limitation in the ability to handle stress, which Plaintiff alleges is consistent with an inability to handle stress in the workplace. (Dkt. No. 14, at 6-7 [Pl. Mem. of Law].) However, as Defendant notes, Dr. Noia did not opine a marked limitation in the ability to handle stress. (Dkt. No. 18, at 9-10 [Def. Mem. of Law].) Rather, Dr. Noia opined that Plaintiff would have "moderate to marked limitations (when pressured to perform) regarding her ability to deal with stress." (T. 291.) Not only did Dr. Noia not opine a marked limitation in this area, he also qualified this limitation by noting she would only experience the opined level of restriction when pressured to perform, suggesting that her restriction would not be so extensive in lower-demand situations. Defendant is correct that Dr. Noia's examination does not support Plaintiff's interpretation for marked limitations, as Dr. Noia noted Plaintiff was relaxed and comfortable during the evaluation and she had intact attention, concentration, and memory other than some noted limitations in performing math-related tasks that was due to weak arithmetic skills rather than an inability to handle the stress of answering the questions. (T. 290.) Plaintiff's argument that Dr. Noia's opinion was consistent with the range of disabling limitations opined by Ms. Cerro is not supported by Dr. Noia's findings or his actual opinion. Notably, the ALJ accounted for this moderate to marked limitation by limiting Plaintiff to low stress work with only routine tasks and duties in an unchanging workplace that would not require high production quotas or multitasking and which would not require her to work in tandem with others. (T. 18.) Plaintiff neglects to show how the detailed RFC limitation fails to account for Dr. Noia's concerns about Plaintiff's limited ability to handle stress when pressured to perform, as it eliminates exposure to work situations where Plaintiff would experience such pressure.

13

For the above reasons, the ALJ's findings regarding the opinion evidence and the RFC are supported by substantial evidence. Remand is not warranted on this basis.

B. **Whether the Credibility Finding is Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 18, at 11-13 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Plaintiff argues that the ALJ failed to apply any of the required regulatory factors for assessing credibility outlined in 20 C.F.R. §§ 404.1529 and 416.929, and instead "merely used boilerplate language that is becoming too common in ALJ decisions." (Dkt. No. 14, at 8 [Pl. Mem. of Law].) However, the ALJ's decision clearly shows that she did more than just rely on inadequate boilerplate language. The ALJ found Plaintiff's allegations about the intensity, persistence, and limiting effect of her symptoms were not credible because they were unsupported by the evidence, were inconsistent with her range of reported daily activities, and because she had work activity after the date she alleged she became disabled. (T. 18-19.) The ALJ's discussion in the decision therefore shows that she did consider pertinent regulatory factors and she provided specific reasons to indicate the basis for her finding. *Schlichting*, 11 F. Supp. 3d at 205.

The ALJ's notation that Plaintiff's allegations of limitations were inconsistent with the objective evidence is supported by substantial evidence. As already discussed above, the treatment notes suggest that Plaintiff's depression was generally improved by prescribed medication and examinations did not substantiate the difficulties with attention, concentration, and memory that she alleged prevented her from working. (T. 290, 321, 361, 364, 372, 432-33.) The generally negative or mild physical findings on examinations also do not support the alleged level of physical restriction. (T. 264, 276, 286, 323, 326, 330, 356, 361, 364.) This reason therefore supports the adverse credibility finding. *See Wojciechowski v. Colvin*, 967 F. Supp. 2d 602, 612-13 (N.D.N.Y. 2013) (acknowledging that the ALJ is permitted to question a claimant's credibility if it is inconsistent with the medical evidence).

The ALJ's citation to Plaintiff's reported daily activities also provides a proper basis for the credibility finding. *See Rockwood v. Astrue*, 614 F. Supp. 2d 252, 271 (N.D.N.Y. 2009)

(noting that a claimant's daily activities is one factor the ALJ should consider in assessing credibility) (citing 20 C.F.R. §§ 416.929(c)(3)(i)-(vii)). The ALJ noted that Plaintiff reported being able to cook, clean, do laundry, shop, care for her personal needs, care for her children, go to church, and socialize with friends. (T. 19.) At the hearing, Plaintiff testified she did housecleaning, cooked for herself and her children, cared for pet guinea pigs, walked down the block to visit an elderly neighbor, did laundry, shopped with assistance from her family, read, watched movies, and took photographs. (T. 485-87.) Plaintiff did note that she was able to do these all these things because she could do them at her own pace, which prevented her from getting anxious or overwhelmed. (T. 486.) In a written function report, Plaintiff noted she cared for her disabled husband and assisted her autistic teenage son, cared for three pet guinea pigs, performed personal care without limitations, made food daily, could do house and yard work with breaks during prolonged tasks, occasionally walked outside, spent time with family, went to church, shopped in stores several times a week with family members, watched movies or television, read, and listened to music (T. 136-40.) Contrary to Plaintiff's suggestions, the ALJ was permitted to consider whether Plaintiff's daily activities were consistent with the extent of limitations she alleged; indeed, it is one of the factors the regulations explicitly require the Agency to consider when assessing credibility. *See Rockwood,* 614 F. Supp. 2d at 271; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The range of reported activities as a whole does not support Plaintiff's reports of disabling deficits in concentration, persistence, pace, attention, and memory. *See Morris v. Comm'r of Soc. Sec.,* No. 12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014) ("The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ

properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence.") This reason also supports the ALJ's credibility finding.

For the above reasons, the credibility finding was based on a proper application of the required analysis and is supported by substantial evidence. Remand is not warranted on this basis.

C.  **Whether the Step Five Finding is Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 18, at 13 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [] and [the hypothetical] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 211 (N.D.N.Y. 2009) (citing *Melligan v. Chater*, No. 94-CV-944S, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Plaintiff argues that the Step Five finding is not supported by substantial evidence because the vocational expert's testimony that the ALJ relied on to support that finding was based on a hypothetical question that did not "accurately and completely describe Plaintiff's limitations." (Dkt. No. 14, at 9 [Pl. Mem. of Law].) As this Court has already concluded that the ALJ did not err in weighing the opinion evidence, formulating the RFC, or assessing Plaintiff's credibility, Plaintiff's argument that errors in those findings resulted in an incomplete hypothetical question to the vocational expert is likewise meritless.

For the above reasons, the Step Five finding is supported by substantial evidence, and remand is not warranted on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: October 4, 2017
Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge